UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HOUSTON SPECIALTY INSURANCE
COMPANY,

      Plaintiff,

v.                                              Case No: 8:15-cv-2165-T-17AAS

ENOCH VAUGHN, individually, and as
Parent and Natural Guardian of M.V., a
minor, ALL FLORIDA
WEATHERPROOFING &
CONSTRUCTION, INC., RICHARD
FULFORD, and ROBERT
MENDENHALL,

      Defendants.

---

**ORDER (1) GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 136), AND
(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 133)**

This cause comes before the Court pursuant to the motion for summary judgment (Doc. No. 133) filed by the Plaintiff, Houston Specialty Insurance Company (the "**Plaintiff**" or "**HSIC**"), the motion for summary judgment (Doc. No. 136) filed by the Defendants, Enoch Vaughn, *et al.* (the "**Defendants**"), and the responses in opposition thereto (Doc. Nos. 149 and 151). Upon review, the Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**, and the Plaintiff's motion for summary judgment is **DENIED**.

**I.**     **Background**

Due to the parties' extensive history before the Court, it is not necessary to re-summarize the facts of this case, which are largely disputed, for purposes of ruling on the summary judgment motions. Instead, the Court refers the parties to its *Order Granting in*

*Part and Denying in Part Motion to Dismiss* (Doc. No. 56)[1] for a chronology of the events that led to the filing of this case, and unless indicated otherwise, all capitalized terms used herein are ascribed the meanings set forth in that order.

As the parties know, the Court previously determined that HSIC's Compliant contained sufficient allegations to state a claim against All Florida and Fulford for breach of the Policy's cooperation clause, but that the Plaintiff had not pled sufficient facts to state a claim against Mendenhall. In so doing, the Court noted that whether HSIC suffered any prejudice as a result of the Insureds' alleged breaches of the cooperation clause "is an inherently factual dispute that is better resolved in the context of a motion for summary judgment, or if necessary, at trial." (Doc. No. 56, at 10).

Following the Court's ruling, on August 19, 2016, the Plaintiff filed an *Amended Complaint for Declaratory Judgment* (Doc. No. 60), alleging that Mendenhall breached the cooperation clause by failing to respond to its requests for information and by failing to communicate openly and honestly with HSIC regarding his employment status. *See* (Doc. No. 60, at ¶ 68). Mendenhall moved to dismiss the amended complaint, arguing that he was not bound by the cooperation clause because HSIC refused to offer him a defense in the State Court Action. The Court considered Mendenhall's argument, but held that based on the allegations in the amended complaint, HSIC could state a claim against Mendenhall for failing to cooperate. (Doc. No. 124). The Defendants have all since filed answers and affirmative defenses to the amended complaint, including defenses that the Plaintiff breached its duty to defend the Insureds, thus relieving them of their obligations to cooperate under the Policy. (Doc. No. 131).

---

[1] The Court's order is available at 2016 WL 7386957 (M.D. Fla. Aug. 4, 2016).

The Plaintiff and Defendants both filed motions for summary judgment on January 6, 2017. (Doc. Nos. 136 and 138). While the parties articulate different versions of the facts, both claim to be entitled to judgment as a matter of law. Specifically, the Plaintiff claims that the Insureds failed to cooperate by rejecting HSIC's defense and settling the State Court Action without its knowledge. The Defendants, on the other hand, argue that HSIC is barred from enforcing the cooperation clause because HSIC breached its duty to defend by (1) providing an inadequate defense, (2) changing the terms of the defense, and (3) refusing to offer Mendenhall a defense. The Defendants also contend that HSIC waived its right to enforce the cooperation clause by failing to comply with the Florida claims administration statute. To the extent that the parties are not themselves entitled to summary judgment, both parties argue that genuine issues of fact preclude summary judgment against them on their respective claims and defenses.

II. **Legal Standard**

"Federal Rule of Civil Procedure 56 requires that summary judgment be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *U.S. Commodity Futures Trading Com'n v. Am. Derivatives Corp.*, 2008 WL 2571691, at *2 (N.D. Ga. June 23, 2008) (internal quotations omitted). "The moving party bears the initial responsibility of informing the court of the bases for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (internal quotations omitted). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact does exist." *Id.* "A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law." *Id.* "An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

### III. Discussion

As noted previously, both parties have moved for summary judgment on their respective claims and defenses. The Court will first address the parties' cross motions for summary judgment on HSIC's claim that the Insureds breached the cooperation clause. Second, the Court will consider the Insureds' affirmative defense that HSIC breached its duty to defend, thus excusing any failure to cooperate under the Policy. Third, the Court will address the Defendants' affirmative defense that HSIC failed to comply with the claims administration statute.

#### A. HSIC's claim that the Insureds breached their duty to cooperate under the Policy.

"Florida law has long established that an insurer may deny coverage and avoid payment of compensation to the victim of the insured's tort where the insured has been guilty of lack of cooperation." *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co.*, 601 F.3d 1143, 1149-50 (11th Cir. 2010). In order for this to occur, (1) the failure to cooperate must constitute a material breach of the policy; (2) the breach must substantially prejudice the rights of the insurer in the underlying action; (3) the insurer must have exercised diligence and good faith in seeking to bring about the cooperation of the insured; and (4) the insurer must have complied with the terms and conditions of the policy in good faith. *Id.* at 1150.

The first element of HSIC's claim for breach of the cooperation clause requires the Plaintiff to prove that the Insureds materially breached their duty to cooperate.

4

Specifically, HSIC must prove that the Insureds materially breached Sections IV. 2. c. (3) and IV. 2. d. of the Policy, which state that:

> c. You and any other involved insured must:
>
> . . . .
>
> (3) Cooperate with us in the investigation or settlement of the claim or defense against the 'suit'; and
>
> . . . .
>
> d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(Doc. No. 1-4, at 1). Here, based on the evidence of record, there can be no dispute that if the Insureds were bound by Sections IV. 2. c. (3) and IV. 2. d. of the Policy, they materially breached their duty to cooperate by rejecting HSIC's defense and entering into a settlement agreement with Vaughn concerning the claims in the State Court Action, the Related Case, and future bad faith litigation against HSIC.[2] Thus, to the extent that the Insureds were bound by the cooperation clause, HSIC has established the first element of its claim, i.e. that the Insureds materially breached their duty to cooperate, as a matter of law.

Turning to the second element of HSIC's claim, i.e. whether the Insureds' failure to cooperate substantially prejudiced the rights of HSIC, the Plaintiff argues that the

---

[2] Whether Mendenhall breached Section IV. 2. c. (3) of the Policy is subject to multiple competing inferences. For instance, a jury could determine that HSIC's September 18, 2014 letter to Mendenhall was self-serving, and that it had all the information necessary to determine Mendenhall's employment status. Alternatively, a jury could conclude that HSIC's request for additional information was reasonable, and that Mendenhall breached the Policy by failing to respond in a timely manner. Nevertheless, there can be no dispute that, to the extent Mendenhall was bound by the Policy, he violated Section IV. 2. d. of the Policy by settling the State Court Action with Vaughn.

settlement agreement between Vaughn and the Insureds deprived it of the right to present defenses that could have eliminated or limited the Insureds' liability in the State Court Action. To this end, the settlement agreement between the Insureds and Vaughn states that "[t]he parties agree to entry of a Final Judgment . . . in favor of . . . Vaughn . . . and against each [of the Insureds] in an amount to be determined through non-binding arbitration." (Doc. No. 87-12, at ¶ 4). The settlement agreement goes on to state that "Vaughn will not record that Final Judgment in the official public records, and will accept the ultimate outcome of all the [bad faith] litigation against Houston Specialty . . . in satisfaction of the Final Judgment." (Doc. No. 87-12, at ¶ 6). Specifically, pursuant to the settlement agreement, the Insureds agreed to "cooperate in the pursuit of the coverage and/or bad faith claims against Houston Specialty . . . [and assigned] to Mr. Vaughn their rights to any money determined to be due or collected from Houston Specialty . . . as a result of the . . . litigation against Houston Specialty." (Doc. No. 87-12, at ¶¶ 8-9). Read together, the foregoing language constitutes a waiver by the Insureds of any defenses they had to liability in the State Court Action, in exchange for Vaughn's promise to only attempt to collect his judgment through subsequent bad faith litigation against HSIC.

While it is true that HSIC and the Insureds still had the opportunity to contest damages through non-binding arbitration, HSIC is correct that by agreeing to entry of final judgment in favor of Vaughn, HSIC lost the ability to contest liability on behalf of its Insureds in the State Court Action. This was prejudicial because prior to execution of the settlement agreement, All Florida had denied Vaughn's allegations as to liability and raised numerous affirmative defenses, including defenses that All Florida "had no actual or constructive notice of the alleged dangerous condition" and that "the alleged dangerous

6

condition was open and obvious" to Vaughn, among others. (Doc. No. 137-26, at ¶¶ 5 & 6). By agreeing to the entry of judgment in favor of Vaughn in an amount to be determined through non-binding arbitration, the Insureds deprived HSIC of its right to continue to contest liability on their behalf. This constitutes prejudice as a matter of law, notwithstanding that HSIC still has the opportunity to contest damages through non-binding arbitration.

The final issue the Court must consider with respect to the Plaintiff's claim for breach of the cooperation clause is whether HSIC exercised diligence and good faith in seeking to bring about the cooperation of the Insureds and in performing its duties under the Policy. Here, disputed issues of fact preclude summary judgment in favor of either party. Whether HSIC acted in good faith in asserting workers' compensation immunity and independent contractor defenses in the State Court Action, or whether those defenses were self-serving and intended only to benefit HSIC, is an inherently factual question that necessitates credibility determinations that cannot be made at this stage of the proceedings. The same holds true of the motivation behind HSIC's intervention in the State Court Action, which depending on who is to be believed could have been for either a proper or self-serving purpose. Similarly, a jury could reasonably infer that HSIC did not act in good faith in denying Mendenhall a defense (equivocally or otherwise) when it had good reason to believe he was an employee of All Florida, particularly given the allegations in the State Court Action. By the same token, if HSIC is to be believed, a jury could determine that the Plaintiff was justified in asking Mendenhall for additional information regarding his employment status before offering him a defense. Since genuine issues of fact exist regarding whether HSIC acted diligently and in good faith in

seeking to bring about the cooperation of its Insureds and in performing its duties under the Policy, neither party is entitled to summary judgment on HSIC's claim for breach of the cooperation clause.

### B. The Insureds' affirmative defense that HSIC breached its duty to defend them in the State Court Action, thus excusing any failure to cooperate

Separate and apart from the insured's duty to cooperate are the insurer's duty to defend and its corresponding right to control the defense. Under Florida law, "a liability insurer's duty to defend third-party claims against its insured is distinct from, and broader than, its duty to indemnify." *Travelers Indem. Co. of Ill. V. Royal Oak Enters., Inc.*, 344 F.Supp.2d 1358, 1365 (M.D. Fla. 2004). "Whether the duty to defend arises depends solely on the allegations contained in the complaint against the insured, and any doubt about the duty to defend must be resolved in favor of the insured." *Id.* "The insurer's duty to defend is not affected by the merits of the third party's claim or the likelihood that the claim will ultimately be successful; an insured is entitled to a defense by its insurer against even the most frivolous suit, so long as it describes an occurrence within coverage." *Id.* Thus, "where an insured denies a claim *and refuses to defend*, the insured can take whatever steps are necessary to protect itself from a claim." *First Am. Title Ins. Co. v. Nat. Union Fire Ins. Co. of Pittsburg, Pa.*, 695 So.2d 465, 477 (Fla. 3d DCA 1997) (emphasis added). Under those circumstances, the insurer may not thereafter rely on the insured's failure to comply with the policy to defeat coverage. *Shook v. Allstate Ins. Co.*, 496 SO.2d 498, 500 (Fla. 4th DCA 1986).

The insurer's duty to defend is counterbalanced by its corresponding right to control the defense of its insured. *Id.* at 1374. "The right to control the defense is a valuable one in that it reserves to the insurer the right to protect itself against unwarranted

8

liability claims and is essential in protecting its financial interest in the outcome of litigation." *Id.* Where the insurer tenders a defense subject to a reservation of rights, the insured has two options: she can reject the defense and hire her own attorneys and control the defense; or she can accept the defense, at which point she is required to cooperate with the insurer throughout the underlying litigation. *Am. Pride*, 601 F.3d at 1149. There are two important exceptions to this rule. First, the insured may reject the conditional defense if "the insurer changes the terms of the conditional defense in a material way." *Id.* Second, if the insurer provides an inadequate defense, the insured is relieved of his obligation to leave the management of the case to the insurer and justifies him in assuming his own defense. *Carousel Concessions, Inc. v. Fla. Ins. Guar. Ass'n*, 483 So.2d 513, 517-18 (Fla. 3d DCA 1986).

Here, the Defendants contend that HSIC breached its duty to defend by: (1) presenting an inadequate defense, (2) changing the terms of the defense, and (3) refusing to defend Mendenhall. The Court will consider these issues in turn.

### 1. Inadequate defense

To constitute an inadequate defense, the insurer's conduct must "have forced the insured to engage its own attorneys." *Royal Oak*, 344 F.Supp.2d at 1369. This could presumably occur if a "conflict between the insurer and the insured actually affected counsel's representation so that it may be said that counsel's actions elevated the interests of the insurer over those of his client, the insured." *Id.* at 1374. Here, the record contains evidence that HSIC's retained counsel, Mr. Rubenstein, believed a conflict of interest arose when HSIC elected to intervene in the State Court Action. *See* (Doc. Nos. 137-31 and 137-32). The fact that Mr. Rubenstein believed a conflict of interest arose between he, the Insureds, and HSIC could support a reasonable inference that HSIC's

9

decision to intervene was so harmful to the Insureds that it would have been impossible for HSIC to continue to control the Insureds' defense in the State Court Action. Alternatively, a reasonable inference could be drawn that Mr. Rubenstein only felt conflicted in arguing the merits of HSIC's motion to intervene, not that he felt HSIC could no longer continue to control the defense. Since the record evidence gives rise to multiple competing inferences, the Defendants are not entitled to summary judgment on their defense that HSIC breached the Policy by providing an inadequate defense.

    2.    *Change of terms of the defense*

Turning to the issue of whether HSIC changed the terms of the defense such that the Insureds were free to reject its defense, the Court similarly concludes that genuine issues of fact preclude summary judgment for either party. Here, there is record evidence that HSIC intervened in the State Court Action to submit questions to the trier of fact regarding its coverage obligations, despite the fact that it had already sought a determination of those issues through the Related Case. Given the record evidence that HSIC understood that intervention can have an deleterious effect on an insured's defense, *See* (69, at 23:11—23) (HSIC's corporate representative noting that the interjection of insurance issues into a tort suit can lead to "runaway juries"), it is reasonable to infer that HSIC's intervention changed the terms of the defense such that the Insureds were entitled to reject its defense. Conversely, HSIC's position that it could have been severed from the State Court Action and that, at most, it would have only submitted jury interrogatories regarding its coverage obligations, supports a reasonable inference that HSIC's intervention was not so significant to warrant the rejection of its defense. Stated simply, a reasonable jury could conclude that the Insureds used HSIC's intervention as an excuse to reject its defense and settle the case for no liability, or that

HSIC intervened for self-serving and ulterior reasons. Given these facts, summary judgment is inappropriate.

### 3. Refusal to defend Mendenhall

It is undisputed that HSIC refused to provide a defense to Mendenhall because HSIC believed that "the undisputed facts between All Florida and [Mendenhall] show[ed] that [Mendenhall] [was] not an insured under the . . . [P]olicy." (Doc. No. 60-1, at 7). Despite HSIC's refusal to offer Mendenhall a defense, the Court denied Mendenhall's motion to dismiss based on HSIC's allegation that it had not unequivocally denied coverage, coupled with its allegations that Mendenhall withheld pertinent information regarding his employment status because he wanted to reject HSIC's defense. (Doc. No. 124, at 5). Now that the record has been fully developed, the Court is in a position to consider whether HSIC breached its duty to defend Mendenhall. Upon review, the Court concludes that it did.

For starters, subsequent to ruling on Mendenhall's motion to dismiss, the Court found that "Mendenhall was an 'employee' during the relevant time period . . . such that Mendenhall is an insured under the Policy." (Doc. No. 153-2, at 7). Consequently, it cannot be disputed that HSIC breached its duty to defend Mendenhall by refusing to offer him a defense in the State Court Action. Second, unlike in *First Am. Title Ins. Co.*, HSIC did not merely refuse to cover Mendenhall's losses in the State Court Action; it also refused to defend him. 695 So.2d at 477 (distinguishing a situation in which an insurer initially declines to cover a claim, which does not necessarily invalidate the insured's duty to cooperate, from a situation in which an insurer refuses to provide any defense). Third, the Plaintiff has not pointed to any record evidence in support of its allegation that Mendenhall withheld information because he intended to reject HSIC's defense. To the

11

contrary, according to HSIC's own statement of undisputed facts, Mendenhall provided HSIC with the information he "felt . . . he needed to provide to Houston Specialty." (Doc. No. 135, at ¶¶ 52-53). Since it is undisputed that Mendenhall was an insured under the Policy, and nothing in the record demonstrates that he improperly withheld information from HSIC, Mendenhall is entitled to summary judgment on his affirmative defense that HSIC breached its duty to defend.

**C. The Insureds' affirmative defense that HSIC failed to comply with Chapter 627 of the Florida Statutes, thus waving its right to enforce the cooperation clause**

In order for an insurer to deny coverage based on a coverage defense, the insurer must comply with the claims administration process set forth in Section 627.426(2) of the Florida Statutes. *See Mid-Continent Cas. Co. v. Basdeo*, 742 F.Supp.2d 1293, 1331 (S.D. Fla. 2010). Under that procedure,

> A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:
>
> (a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured . . .; and
>
> (b) Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer:
>
> 1. Gives written notice to the named insured by registered or certified mail of its refusal to defend the insured;
>
> 2. Obtains from the insured a nonwaiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer during and following the pendency of the subject litigation; or
>
> 3. Retains independent counsel which is mutually agreeable to the parties. Reasonable fees for the counsel may be agreed upon between the parties or, if no agreement is reached, shall be set by the court.

Fla. Stat., § 627.426(2). An insurer's argument that an insured has not complied with a cooperation provision is a "coverage defense" subject to the requirements of Section 627.426(2)(a). *Basdeo*, 742 F.Supp.2d at 1332.

Here, the Defendants contend it is undisputed HSIC did not send a reservation of rights letter within 30 days of learning that the Insureds would be rejecting their defense. Moreover, even if HSIC did timely send the Insureds a reservation of rights letter for breaching the cooperation clause, the Defendants argue that the Plaintiff failed thereafter to comply with any of the options set forth in Section 627.426(2)(b)(1)-(3). The Plaintiff responds by arguing that it is a surplus lines insurer and, as a result, does not have to comply with the claims administration procedure set forth in Section 627.426(2). Alternatively, to the extent that Section 627.426(2) applies in this case, HSIC argues that it nevertheless complied with the claims administration procedure. The Court addresses both issues in turn.

    1.  *Whether the Policy is a surplus lines policy.*

"[T]he provisions of chapter 627 do not apply to surplus lines insurance." Fla. Stat., § 626.913(4). "Surplus lines insurance is an alternative product that can be purchased from insurers not authorized to do business in Florida when the coverage sought is not available from authorized insurers." *Mt. Hawley Ins. Co. v. One River Plaza Co.*, 2014 WL 11721638, at *2 n.1 (S.D. Fla. Sept. 18, 2014). To constitute a surplus lines policy, the following words must be stamped or written upon first page of the policy or the certificate, cover note, or confirmation of insurance: "THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE

OBLIGATION OF AN INSOLVENT UNLICENSED INSURER." Fla. Stat., § 626.924(1). Moreover, surplus lines policies "shall have stamped or printed on the face of the policy in at least 14-point, boldface type, the following statement: SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY." Fla. Stat., § 626.924(2).

As noted previously, HSIC contends that it was not required to comply with the claims administration statute because the Policy is a surplus lines policy. The Defendants disagree, noting that the Policy attached to the Complaint at Exhibit "A" does not contain the foregoing language required under Sections 626.924(1)-(2) of the Florida Statutes. The Plaintiff responds by submitting an affidavit by Barry Scarr of Scarr Insurance Group, along with an alternative version of the Policy that contains the language required under Sections 626.924(1)-(2) of the Florida Statutes. See (Doc. No. 149-2, at 8).

Upon review, it is unclear to the Court whether the required surplus lines language has been "stamped or written upon first page of the policy or the certificate, cover note, or confirmation of insurance" submitted by Mr. Scarr. The surplus lines language appears on page three (3) of the Policy submitted by Mr. Scarr, not on the "first page of the policy," and the Court lacks sufficient record evidence from which to determine whether page three (3) of the Policy is "the certificate, cover note, or confirmation of insurance" within the meaning of Section 626.924(1).

Moreover, the Policy attached to the Complaint at Exhibit "A" and the Policy attached to Mr. Scarr's affidavit differ in another significant respect. The Policy attached to the Complaint as Exhibit "A" contains the following stamp on the declarations page:

14



(Doc. No. 1-2, at 4). The identical portion of the Policy attached to Mr. Scarr's affidavit appears as follows:



(Doc. No. 149-2, at 10). Consequently, it appears that the Policy labeled "CERTIFIED ORIGINAL COPY" does not contain the surplus lines language required under Sections 626.924(1)-(2) of the Florida Statutes, while the Policy that does is not a "CERTIFIED ORIGINAL COPY." Thus, there are disputed issues of fact precluding the Court from determining whether the Policy is a surplus lines policy.

2. *Whether HSIC complied with the claims administration statute.*

Assuming *arguendo* that the Policy was not a surplus lines policy, it is undisputed that HSIC failed to comply with the claims administration statute. "Florida courts require strict compliance with Section 627.426(2) unless actual notice to the insured of the insurer's position has occurred on a *timely* basis." *Basdeo*, 742 F.Supp.2d at 1332 (emphasis added). Under the "actual notice" exception, courts may excuse a technical non-compliance with the statute if the insurer nevertheless communicates the required information in a timely manner. For instance, in *Phoenix Ins. Co. v. McCormick*, the court excused an insurer's failure to send a reservation of rights letter by certified or registered

15

mail, when it had communicated its refusal to defend the insured via telephone and regular mail within the 30 day period set forth in Section 627.426(2)(a). 542 So.2d 1030, 1032 (Fla. 2d DCA 1989) (finding that "no prejudice results from a notice actually delivered by one method rather than another" where it was undisputed that the insured received the oral and written notice of the insurer's refusal to defend).

Here, the parties disagree regarding whether HSIC's duty to send a reservation of rights letter under Section 627.426(2)(a) arose when the Insureds initially communicated their intention of rejecting HSIC's defense in December 2014, or when the Insureds' independent counsel formally substituted for HSIC's retained counsel in the State Court Action in April 2015. To the extent that the latter date constitutes the date HSIC "knew or should have known of the coverage defense," the reservation of rights letter was timely sent under Section 627.426(2)(a). To the extent the earlier date controls, HSIC's reservation of rights letter was untimely, unless HSIC's request that All Florida and Fulford reconsider its decision to reject its defense constitutes a reservation of rights.

Ultimately, whether the 30 day deadline set forth under Section 627.426(2)(a) began to run in December 2014 or April 2015 is immaterial, as it is undisputed that HSIC never complied with any of the three options set forth in Section 626.426(2)(b)(1)-(3) in a timely manner. In fact, HSIC does not offer any argument or point to any record evidence demonstrating that it complied (or even attempted to comply) with Section 627.426(2)(b)(1)-(3). Instead, HSIC argues, without citing any authority, that complying with Section 627.426(2)(b)(1)-(3) would have been futile, and that the Insureds were not otherwise prejudiced by its failure to do so. HSIC's argument runs contrary to the caselaw requiring "strict compliance with Section 627.426(2) unless actual notice to the insured of

16

the insurer's position has occurred on a *timely* basis." *Basdeo*, 742 F.Supp.2d at 1332 (emphasis added). It is undisputed that HSIC failed to comply with any of the options set forth in Section 627(2)(b)(1)-(3) on a *timely* basis. In fact, to this date there is no evidence that HSIC ever complied with Section 627.426(2)(b). Thus, to the extent that the jury determines the Policy was not a surplus lines policy, the Defendants are entitled to judgment as a matter of law due to HSIC's failure to comply with the claims administration statute.

### IV.  Conclusion

Accordingly, it is

**ORDERED** that HSIC's motion for summary judgment (Doc. No. 133) is **DENIED**.

It is further **ORDERED** that the Defendants' motion for summary judgment (Doc. No. 136) is **GRANTED IN PART AND DENIED IN PART**. Specifically, the Defendants' motion is **GRANTED** as to Mendenhall's affirmative defense that HSIC breached its duty to defend and otherwise **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 14th day of March, 2017.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record